UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| VINCENT MORRIS, on his own behalf and on behalf of a class of those similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:20-cv-34 |
| SHERIFF OF ALLEN COUNTY, in his official capacity; ALLEN COUNTY, INDIANA, | ) ) ) ) | |
| Defendants. | ) | |

**Class Action Complaint for Declaratory and Injunctive Relief Pursuant to Federal Rule of Civil Procedure 23(b)(2)**

**Introduction**

1. The Allen County Jail is chronically and seriously overcrowded. As a direct result, violence between prisoners is common and prisoners are denied the minimal levels of life's necessities. Conditions in the Jail violate the requirements of the United States Constitution. Declaratory and injunctive relief should issue to address and remedy the systemic problems in the Jail.

**Jurisdiction**

2. This Court has jurisdiction of this case This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

[1]

4.      Declaratory relief is authorized by 28 U.S.C. §§ 2201, 2201, and by Rule 57 of the Federal Rules of Civil Procedure.

5.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

**Parties**

6.      Vincent Morris is an adult person who is currently confined in the Allen County Jail.

7.      The office of the Allen County Sheriff is sued pursuant to Rule 25(d)(2) of the Federal Rules of Civil Procedure.

8.      Allen County, Indiana is a county located in northeast Indiana. Its executive is the Allen County Commissioners and its fiscal body is the Allen County Council.

**Class action allegations**

9.      This action is brought by plaintiff on his own behalf and on behalf of a class of those similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

10.     The class is defined as:

   all persons currently confined, or who will in the future be confined, in the Allen County Jail.

11.     All the requirements of Rule 23(a) are met in this cause in that:

   a.      The class is so numerous that joinder of all members is impractical. Although the Jail has 741 operational beds, it regularly houses more than this

number of persons and the membership of the class is constantly changing as prisoners enter and leave the facility.

b. There are questions of law or fact common to the class: whether conditions in the Allen County Jail violate the United States Constitution.

c. The claims of the representative party are typical of those of the class.

d. The representative party will fairly and adequately protect the interests of the class.

12. The further requirements of Rule 23(b)(2) are met in this cause as at all times defendants have acted or have refused to act in a manner generally applicable to the class, thereby making final injunctive and declaratory relief appropriate with respect to the class as a whole.

13. Undersigned counsel are appropriate persons to be appointed as counsel for the class pursuant to Federal Rule of Civil Procedure 23(g) and should be appointed.

**Legal background**

14. Indiana law provides that the sheriff of a county must "take care of the county jail and the prisoners there." Ind. Code § 36-2-13-5(a)(7).

15. The county commissioners of each Indiana county, as the county executive, have the statutory duty to "establish and maintain a . . . county jail." Ind. Code § 36-2-2-24(a). This includes not only providing a jail, but also keeping it in good repair. *Weatherholt v. Spencer County*, 639 N.E.2d 354, 356 (Ind. Ct. App. 1994).

**Factual allegations**

16. The Allen County Jail was built in 1981, although it was added onto in 1994, 1998 and 2004.

17. At the current time the Jail has 741 operational beds.

18. However, the Jail often houses more than 800 prisoners.

19. Under Indiana law, county jails are inspected annually by the Indiana Department of Correction ("DOC") jail inspectors. In the most recent report, dated August 8, 2019, the inspector found that on the date of the Jail's inspection there were 741 operational beds, but there were 863 persons housed in the Jail: 728 adult males, 130 adult females, and 5 male juveniles who had been waived to adult court.

20. A jail facility is deemed to be overcrowded long before it gets to 100% of its capacity.

21. This is because when a jail exceeds approximately 80% of its capacity it becomes difficult, if not impossible, to conduct classification of prisoners much beyond separating men and women.

22. Classification is essential to protect the safety of both prisoners and staff. For example, prisoners with mental and physical disabilities should be separated from those without disabilities, prisoners who are prone to be preyed upon should be separated from predators, prisoners who have previous problems with each other should be separated, etc.

23. The population pressures on the Allen County Jail prevent effective classification.

24. As a result of the overcrowding, some blocks have prisoners who are sleeping on mattresses on plastic platforms, called "boats," on the floors of cells because the permanent beds are occupied. This causes an enormous amount of tension as space is extremely tight. Toilets are in each cell and when prisoners are on the floor they have to be stepped over for the prisoners in the permanent beds to use the toilets. The "extra" prisoners in each cell are forced to sleep near toilets.

25. The prisoners are locked into their cells for the evening and much of the day and there simply is insufficient room in the cells when they have someone sleeping on the floor.

26. Although the Jail has an outside and indoor recreation area, recreation is provided infrequently and some cell blocks receive no recreation outside of their cell areas.

27. Much of the Jail is linear in structure and there is inadequate audio and video surveillance equipment in the Jail to monitor the prisoners.

28. In order for the safety of prisoners to be assured, there must be frequent inspections by Jail staff where they can walk through and observe what is happening.

29. The prisoners are not adequately monitored by staff.

30. As a result, assaults between prisoners are frequent, aggravated by the overcrowded conditions.

31. Additionally, if prisoners are in medical or other forms of distress, it is difficult, if not impossible, to get prompt attention from guards.

32. There have been at least 4 suicides in the Jail since 2011.

33. Vincent Morris has been in the Allen County Jail since March 18, 2019.

34. Originally, he was a pretrial detainee, but he has pled guilty to criminal offenses.

35. Mr. Morris has resided in the following cell blocks in the Jail: A, E, K.

36. He is currently in K-block. There are 10 cells in the block with 2 permanent beds in each cell. However, due to the population pressures in the Jail there are frequently persons sleeping on the floor of a number of the cells.

37. Prior to K-block, Mr. Morris was housed in E-block, a disciplinary block.

38. In E-block there are 6 cells with two permanent beds and each cell had an extra person in it who slept on the floor in a plastic "boat."

39. Prior to E-block, Mr. Morris spent time in A-block. He was in a cell with only one permanent bed and was forced to sleep on the floor in a "boat" for almost 6 months. The other cells in the block all had two permanent beds and there were frequently persons forced to sleep on the floor in boats in each cell because of overcrowding.

40. Although there are cameras in the blocks where Mr. Morris has been, and is currently, housed, the cameras only show the area immediately outside of the cells. They do not show the interior of the cells and they allow for blind spots in the areas immediately outside of the cells.

41. There is no intercom or similar system allowing communication with staff in the blocks where Mr. Morris has been housed.

42. Guards do not frequently come into the cell blocks to check on prisoners.

43. There is a control area that looks into the blocks but there is frequently not st1:aff there. This is the same in the other blocks in which Mr. Morris was housed.

44. Fights between prisoners often occur and the correctional officers frequently do not know that they have happened as they are not in the cell blocks and cannot see into all areas of the cell blocks with cameras and are not in the control areas.

45. The overcrowding causes a great deal of tension that leads to fights. Mr. Morris is aware that sometimes prisoners are hospitalized as a result of the fights. He estimates that there are at least four physical fights a week in the cell blocks where he has been placed.

46. Part of this tension is because of the sheer fact that there are too many people in too small of a space.

47. The tension is also caused or aggravated by the inability of the Jail to engage in proper classification of prisoners. For example, a prisoner facing 50 years might be housed with a prisoner who is getting out in two months and there will be a fight because the person facing 50 years does not want to hear about the other prisoner soon being a free person.

48. The dangerous conditions that exist in the cell blocks without the knowledge of guards include more than just the fights that go on. For, as noted, it is often impossible to attract the attention of the correctional staff to respond to such things as medical emergencies.

49. For example, Mr. Morris had a medical need in the evening. His cell mate had to kick on the door for 30 minutes before a correctional officer came and took Mr. Morris out for medical observation.

50. At the current time Mr. Morris does not receive any recreation outside of his cell area. Although he is allowed out of his cell into the area immediately outside of his cell area for a brief period of time each day, he is not able to engage in vigorous physical exercise in this area.

51. He believes that other prisoners who have a higher behavioral rating than he does are offered 1 hour a week of recreation outside of their immediate cell areas.

52. Recreation outside of the cell area is necessary so prisoners can "blow off steam" and minimize the tension that can, and frequently does, lead to violence. Mr. Morris and the other prisoners are adversely affected by the lack of recreation.

53. The lack of recreation, the overcrowding, and the lack of staff supervision has caused, and continues to cause, tension and dangerous conditions in the blocks where Mr. Morris has been housed and where he is housed currently.

54. Mr. Morris is concerned not only for his own safety, but for the safety of other prisoners who are similarly injured by conditions in the Jail. He believes that all prisoners are negatively affected by the overcrowding, lack of sufficient staff, lack of recreation, and the other problems that all this causes.

55. Mr. Morris has filed grievances to challenge the overcrowded conditions. On November 28, 2019, he filed a grievance that states, without any editing or correction, "This cell is over crowded theres 3 men in this cell theres no room to walk around everywhere I step Im stepping on someone or someones belongings we need room!!." This was returned to him marked "noted." He filed another grievance addressing overcrowding on November 30.

56. The responses to his grievances did not resolve them. At no point was he informed how to appeal the lack of resolution to a higher level. The grievance forms do not contain any information concerning appeals and he is not aware of any appeal procedure.

57. He has therefore exhausted all grievance remedies that were available to him.

58. Defendants have been on notice for some time concerning the deficiencies in the Jail, but have failed to take the necessary steps to resolve the overcrowding and other problems. At all times they have acted in a deliberate and purposeful manner and a reasonable person would objectively perceive their behavior as deliberately indifferent to these serious deficiencies.

59.     The conditions in the Allen County Jail result in the denial of basic human needs and the minimal civilized measure of life's necessities, and amount to punishment.

60.     Allen County has failed in its mandatory duty to establish and maintain the Allen County Jail in a constitutional manner.

61.     Defendant Sheriff has failed in his mandatory duty to take care of the Allen County Jail and the prisoners detained there in a constitutional manner.

62.     The actions and inactions of the defendants are causing plaintiff and the putative class irreparable harm for which there is no adequate remedy at law.

63.     At all times defendants have acted and have refused to act under color of state law.

**Claim for relief**

64.     The conditions of the Allen County Jail violate the 14th Amendment to the United States Constitution as applied to pre-trial detainees and the 8th Amendment to the United States Constitution as applied to convicted prisoners.

**Request for relief**

WHEREFORE, plaintiff requests that this Court:

1.      Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

2.      Certify this case as a class action with the class as defined above and class counsel as set out below.

3.      Declare that the actions and inactions of defendants violate the United States Constitution for the reasons noted above.

4. Enter a permanent injunction requiring defendants to take all steps necessary to ensure that the conditions of confinement at the Allen County Jail comply with the United States Constitution.

5. Award plaintiff costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

6. Award all other proper relief.

    Kenneth J. Falk
    No. 6777-49
    Stevie J. Pactor
    No. 35657-49
    ACLU of Indiana
    1031 E. Washington St.
    Indianapolis, IN 46202
    317/635-4059
    fax: 317/635-4105
    kfalk@aclu-in.org
    spactor@aclu-in.org

    Samuel Bolinger
    No. 10786-98
    803 S. Calhoun St.
    Suite 300
    Fort Wayne, IN 46802
    260/407-0040
    mark@slblawfirm.org

    Attorneys for Plaintiff and the Putative Class